NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

|  |  |  |
|---|---|---|
| GENO L. McINTOSH, | : | |
| | : | Civ. No. 19-9889 (RMB-AMD) |
| Plaintiff | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| OFFICER HICKERSON, *et al.*, | : | |
| | : | |
| Defendants | : | |

APPEARANCES:

Geno L. McIntosh
South Woods State Prison
215 South Burlington Road
Bridgeton, NJ 08302
    Plaintiff, *pro se*

James T. Dugan, Assistant County Counsel
Atlantic County Department of Law
1333 Atlantic Avenue, 8th floor
Atlantic City, NJ 08401
    On behalf of Defendants Officer Hickerson, Capt. Carber, Lt.
    Stowe, Officer Anacheta, Officer Buddy, Officer Dempsey,
    Officer Hubbard, Officer King, Officer Marcardo, Officer
    Mazza, Officer Rivera, Officer Shantaue, Officer Soullard,
    Sgt. Ashworth, Sgt. Keating, Sgt. Martyn, Sgt. Smith, and
    Sgt. Tornblom

BUMB, United States District Judge

   This matter comes before the Court upon the motion for summary judgment (Defs' Mot. for Summ. J., Dkt. No. 55) by Defendants Officer Hickerson, Capt. Carber, Lt. Stowe, Officer Anacheta, Officer Buddy, Officer Dempsey, Officer Hubbard, Officer King, Officer Marcardo, Officer Mazza, Officer Rivera, Officer Shantaue, Officer Soullard, Sgt. Ashworth, Sgt.

Keating, Sgt. Martyn, Sgt. Smith, and Sgt. Tornblom (collectively "Defendants"), and Plaintiff's response in opposition to the motion for summary judgment ("Pl's Opp. Brief," Dkt. No. 54.) The Court will determine the motion on the briefs, without oral hearing, pursuant to Federal Rule of Civil Procedure 78(b). For the reasons discussed below, the Court will grant Defendants' motion for summary judgment.

I. PROCEDURAL HISTORY

Plaintiff Geno L. McIntosh filed a *pro se* prisoner civil rights complaint on April 15, 2019, for incidents which allegedly occurred while he was incarcerated in the Atlantic County Justice Facility ("ACJF"). (Compl., Dkt. No. 1.) The Court administratively terminated the action because Plaintiff failed to pay the filing fee or submit an application to proceed *in forma pauperis* under 28 U.S.C. § 1915(a). (Order, Dkt. No. 2.) On April 26, 2019, Plaintiff filed an amended complaint (Am. Compl., Dkt. No. 6, *refiled at* Dkt. No. 11; Order, Dkt. No. 8.) The Court granted Plaintiff's IFP application on May 10, 2019. (Order, Dkt. No. 10.) On October 11, 2019, the Court *sua sponte* dismissed claims against many defendants based on immunity and failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b)(1) and 42 U.S.C. § 1997e(c)(1), and permitted certain claims to proceed against the remaining defendants. (Opinion, Dkt. No. 24; Order, Dkt. No. 25.) On March 11, 2020, Defendants filed a motion for summary judgment in lieu of an answer (Mot. for Summ. J., Dkt. No. 48), which the Court

2

administratively terminated pending Plaintiff's filing of a response to the motion. (Order, Dkt. No. 53.) Plaintiff filed a response in opposition to summary judgment on October 20, 2020 (Pl's Opp. Brief, Dkt. No. 54), and Defendants resubmitted their motion for summary judgment. (Mot. for Summ. J., Dkt. No. 55.)

II. THE AMEDED COMPLAINT

In his amended complaint (Dkt. No. 11), Plaintiff alleges claims of physical and sexual assault against Officer Hickerson, Officer Hubbard, Sergeant Tornblom, Officer Shantaue, Officer Soullard, Sergeant Smith, Officer Marcado, Sergeant Martyn, Officer Mazza, Officer Dempsey, Sergeant Keating, Sergeant Stowe, Officer King, Sergeant Ashworth, Officer Rivera and Officer Buddy. Plaintiff further alleges a claim of failure to protect under the Fourteenth Amendment against Captain Carber, and a claim of First Amendment retaliation against Officer Anacheta. The Court construes Plaintiff's claims as arising under 42 U.S.C. § 1983 and state tort law. On the complaint form used for the amended complaint, Plaintiff checked a box indicating that he exhausted administrative remedies, explaining that he wrote to the warden directly and got no response. (Am. Compl., Dkt. No. 11 at 14.)

III. UNDISPUTED MATERIAL FACTS

Defendant submitted the following material facts (Defs' SOMF, Dkt. No. 55-4), which are undisputed by Plaintiff.[1] Plaintiff

---

[1] Defendants' Statement of Material Facts are supported by the

opposes summary judgment solely on the merits of his claims. (Pl's Opp. Brief, Dkt. No. 54.)

1. Plaintiff was incarcerated in ACJF at the time he filed his amended complaint on or about May 9, 2019. (Am. Compl., Dkt. No. 11.)

2. Plaintiff received a copy of the ACJF Inmate Handbook upon his admission to the facility. (Defs' Ex. C, Dkt. No. 55-2 at 7.)[2]

3. The ACJF maintains an inmate resolution process described in the Inmate Handbook, which is given out to all inmates, including Plaintiff, Geno McIntosh. (Id.)

4. The Inmate Handbook (Defs' Ex. D, Dkt. No. 55-2 at 27-28) provides:

   a. An inmate resolution process has been established as the informal process to mutually resolve issues in the facility.

   b. All issues are to be handled through the chain of command (i.e.: Officer, Sergeant, Lieutenant/Shift Commander) via an inmate resolution form. A copy of the resolution form is in the inmate handbook or may be obtained from your housing unit officer.

   c. The inmate resolution form will be returned to you after each step up the chain of command with your requested resolution being approved or denied and an explanation for the decision.

   d. A grievance procedure has been established to protect both inmates and staff regarding issues in the facility.

   e. All grievances are to be first handled informally through the chain of command (i.e.: Officer, Sergeant, Lieutenant/Shift Commander) via an inmate resolution form. After all attempts to handle the

---

Certification of Counsel, James T. Dugan and the attached exhibits. ("Dugan Cert." Dkt. No. 55-3.)

[2] Page citations are to the page numbers assigned by the Court's electronic document filing system, CM/ECF.

matter informally are exhausted, with no mutually agreed upon resolution, the matter can then be formally grieved to the Warden/Director's office. A grievance form can be obtained from the Lieutenant after the final step of the resolution form.

 f. A formal grievance shall be filed only using the grievance form; no other forms will be accepted. The grievance form must be filled out completely with all requested information supplied. Incomplete forms shall be denied; an inmate may not submit more than one grievance on the same issue within a 15 day period. The grievance form must be submitted with your resolution form to show that the informal process was met. Any grievances submitted without an attached resolution form will be rejected until informal process is followed. The grievance form shall be submitted in the inmate service drop box located in each housing unit. You will receive a copy of your submitted grievance once received.

 g. Certain matters may not be grieved, including

  i) Matters out of the facilities control (probation, parole, sentences, court)

  ii) Disciplinary matters taken against the grieving inmate or any other inmates.

  iii) Housing assignments and classification status.

 h. Grievances, and responses to the same, shall be filed within the following time frames: i) An inmate has ten (10) working days to file a grievance from the date of the last step of the resolution form. No grievance will be processed if it is in excess of the ten day requirement.

 i. The Director/Warden shall have fifteen (15) working days from the date of receipt of the complaint to render his/her decision. If the grievance is of an emergency nature the reply from the Warden's office shall be within 48 hours.

 j. Inmates will receive no reprisals for filing grievances.

5. During the course of his incarceration, Plaintiff filed

dozens of inmate request forms. (Def's Ex. E, Dkt. No. 55-2 at 65-111.)

6. Plaintiff failed to file any grievance during his period of incarceration. (Dugan Cert. ¶ 11, Dkt. No. 55-4.)

IV. DISCUSSION

A. Summary Judgment Standard of Review

Summary judgment is proper where the moving party "shows that there is no genuine dispute as to any material fact," and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Daubert v. NRA Group, LLC, 861 F.3d 382, 388 (3d Cir. 2017). The burden then shifts to the nonmovant to show, beyond the pleadings, "'that there *is* a genuine issue for trial." Id. at 391 (quoting Celotex Corp. v. Catrett, 447 U.S. 317, 324 (1986) (emphasis in Daubert)). "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (citing Fed. Rule Civ. Proc. 56(c)). "'[A] dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the non-moving party.'" Pearson v. Prison Health Serv., 850 F.3d 526, 534 (3d Cir. 2017) (quoting Lamont v. New Jersey, 637 F.3d 177, 181 (3d Cir. 2011)). "If a party fails to address another party's assertion of fact as required by Rule 56(c), the court may: … (2) consider the fact undisputed for purposes of the motion; [and] (3) grant summary judgment if the motion and supporting materials--including the facts

6

considered undisputed--show that the movant is entitled to it…. Fed. R. Civ. P. 56(e), (2), (3).

B. Exhaustion Requirement in 42 U.S.C. § 1997e(a)(1)

It is mandatory for prisoners to exhaust the administrative remedies available to them before they file civil actions concerning any aspect of prison life in the federal courts. 42 U.S.C. § 1997e(a)(1); Porter v. Nussle, 534 U.S. 516, 532 (2002)). The statute requires "proper exhaustion," which is completion of each step of the prison's administrative remedy program in compliance with the identified procedures. Jones v. Bock, 549 U.S. 199, 217-18 (2007). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." Id. at 218. However, a prisoner need only exhaust the administrative remedies that are available to him. Ross v. Blake, 136 S. Ct. 1850, 1854-55 (2016). An administrative remedy is unavailable where (1) it operates as a dead end; (2) it is so opaque that it is incapable of use; and (3) when prison administrators thwart inmates from taking advantage of the grievance process. Ross, 136 S. Ct. at 1859-60 (2016).

C. Plaintiff Failed to Exhaust Administrative Remedies

Plaintiff failed to address Defendants' assertion of facts concerning exhaustion of administrative remedies in his brief in opposition to summary judgment. (Pl's Opp. Brief, Dkt. No. 54.)

Defendants' Statement of Facts (Dkt. No. 55-4) and supporting documents (Dkt. Nos. 55-2 and 55-3) establish that Plaintiff was provided with the Inmate Handbook used at ACJF, which describes the inmate grievance process available to all inmates. By providing the handbook Plaintiff was made aware of how to file a grievance in compliance with ACJF's procedures, but he failed to do so. Even if Plaintiff had offered an affidavit in support of his statement in the amended complaint that he wrote directly to the warden about his issues and received no response, this was insufficient to properly exhaust ACJF's administrative grievance process, which begins with an Inmate Resolution Form submitted up the chain of command before filing a formal grievance with the warden. Failure to properly exhaust administrative remedies is cause for dismissal with prejudice under 42 U.S.C. § 1997e(a)(1). See e.g. Shifflett v. Korszniak, 934 F.3d 356, 366 (3d Cir. 2019) (affirming district court dismissal of claim with prejudice for failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a)(1)). Therefore, the Court will grant Defendants' motion for summary judgment and dismiss all claims under 42 U.S.C. § 1983 with prejudice for failure to exhaust administrative remedies.

V. THE COURT DECLINES TO EXERCISE SUPPLEMENTAL JURISDICTION

The Court liberally construes the amended complaint, as it must for a *pro se* litigant, as containing state tort law claims against the defendants. "Supplemental jurisdiction in the district courts is

governed by 28 U.S.C. § 1367." Kach v. Hose, 589 F.3d 626, 650 (3d Cir. 2009).

> [I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

28 U.S.C. § 1367(a). "[D]istrict courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … (3) the district court has dismissed all claims over which it has original jurisdiction." Id. § 1367(c)(3). As discussed above, this Court will grant summary judgment to Defendants on all federal claims in the amended complaint and dismiss those claims with prejudice, leaving only state law claims. This Court is operating under a judicial emergency due to unfilled judicial vacancies,[3] causing delay in adjudicating matters before the Court. Thus, for reasons of judicial economy and fairness to the litigants, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims.

VI. CONCLUSION

For the reasons discussed above, the Court grants Defendants' motion for summary judgment and declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

---

[3] See Current Judicial Vacancies, available at https://www.uscourts.gov/judges-judgeships/judicial-vacancies/current-judicial-vacancies (last visited May 20, 2021.

An appropriate Order follows.

**Date: May 25, 2021**

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**